Per Curiam.
Upon this bill, answer, replication, and evidence, the facts appear to be, that on the 17th of August, 1807, David Winchester entered 300 acres of land in the second district, first range, fifth section : “ Beginning at James Robertson’s southwest corner, on the section line, then west, 300 poles; thence north, 160 poles ; thence east and south, to the beginning.” Gleaves entered 800 acres on the 30th of November, 1807, situate in the same district, section, and range : “ Beginning at John Record’s southwest corner, on * the section line, then west with the said line, 300 poles, thence north and east for complement.” John Record’s entry on the same line of that section, for 1,200 acres, had been made shortly before that time on lands within the same section ; and Loften afterwards made an entry the 24th of August, 1807, calling for Record’s and Winchester’s entry. A grant issued to Gleaves in 1810 ; a grant also issued to Winchester in 1810. Both grants began at the southwest corner of Record’s, which was in the section line, being the southern boundary of the section. And the question is, *175 which of these two enterers had the better title in equity ? That depends upon the question, whether is Winchester’s entry a special entry for the lands covered by his grant? Winchester’s entry was placed on the general plan in the office, beginning at Records southwest corner in the section line, which was marked I. R. It is stated in the answer, but not proved, that there were other entries in that section before the 17th of August, 1807. It does not appear that there was any entry on that line of the section before the 17th of August, 1807. The general plan showed precisely the spot claimed by Winchester, which his entry covered. An ejectment was heretofore carried on between the parties, and was finally decided in the Superior Court-in favor of Gleaves; what were the reasons of the decision does not appear, or how far they applied to the present controversy does not appear. It appears by the testimony of four or five witnesses, that Gleaves and his locator both knew of the mistake committed in calling for James Robertson’s corner instead of I. Record’s, and it was, they say, because of this mistake, that Gleaves’s entry was made upon the same place. Hightour intended to enter, before he saw Winchester’s entry upon the general plan, but then desisted. Anderson, the Surveyor-General, conceived the place certain by its position on the general plan. Before we proceed * to the main point in this cause, lét us clear away the preliminary objections which have been made on it. First, as to the jurisdiction of this court, sitting as a court of equity. We are satisfied with the opinion of the called court which sat here about two years since, When the complainant’s title is both legal and equitable, a trial in ejectment which may be renewed is no bar to the assertion of his claim in equity any more than to the prosecution of a new ejectment; it would be unreasonable to say so. Secondly, as to the law established in the decision upon the ejectment in the Supreme Court on a writ of error ; that is not in our way, for we know not what grounds the court went on, nor the reasonings employed by the then judges, which resulted in the affirmation of the judgment of the court below. We must of course be governed by our own reasons upon this subject. Thirdly, as to extrinsic testimony to add to or alter an entry, this court is clearly of opinion that no such testimony ought to be received. The secret and unexpressed intention of the locator, cannot indicate to subsequent *176 locators the land meant to be appropriated so as to affect their consciences with unfairness, should they attempt to appropriate the same lands which the other contemplated. Fourthly, personal notice is not such as the law prescribes. It has directed an entry for that purpose, which is the same thing in effect as to say, You shall give a notice in writing. It would introduce the danger to be apprehended from parol proof of notice, and defeat the main purpose of the Legislature, if the latter were to be received as sufficient. Fifthly, as to the use which may be made of the general plan, the solution of that question is not now indispensable. The plan was directed to be made from the actual surveys of sections, and of claims within sections, including all those made in the new office. It was to lie in the office for the inspection of all those who wished to see it. Every new entry was to be laid down upon * it as soon as made, and before actual survey. A copy was to be sent to each register’s office, and there preserved. The construction which makes all this carefulness and industry end in nothing, is neither agreeable to well established rules for the exposition of statutes, or to the respect which is due to the Legislature. Were they at children’s play when all these provisions were made and this labor called for, meaning only to amuse themselves ? Certainly not. They intended it to be used as evidence of something; perhaps not as conclusive evidence that the entry was correctly laid down, but as evidence when correctly laid down, that he who saw it knew of the position it occupied, and should not afterwards pretend ignorance thereof. If before, he, upon seeing the entry, must inquire concerning its call; this, without such inquiry, now enabled him to see the place spoken of in the entry, and to avoid it if he chose. Most certainly it would give him no such information of land laid down on a place not described in the entry. We now come to the main question. As to the justice of the case, there can; not be a dissenting opinion. Winchester entered it, paid for it, had it laid down on the general plan. What place he intended to appropriate was known to Mr. Hightour and his company, who, seeing its position, declined entering. Gleaves’s locator both knew the same and talked of it. They spoke of it as a mistake ; they were warned not to meddle with it, for that the law would not, for that mistake, take the. land from Winchester and give it to them. These remarks, however, have no further application than *177 this, to give satisfaction, if upon searching for legal principles they shall be found to support the justice of the case, and not to be in opposition to it. Lex plus laudatur quando rations probatur, is one of the best maxims which a judge can select for the regulation of his conduct. Technicality and subtlety will then never triumph over the great law of common sense. The question to * be decided is, whether the entry of Winchester contains certainty enough to make a special entry, and consequently to raise an equity for him prior to and better than that which is said to be raised for the defendant by his entry? An entry is certain enough if there be upon the face of it so many calls as will upon reflection lead an inquirer to fix upon the place in question as that which the enterer intended to be sanctified by a survey. It is not necessary to this end that every call be found to exist at the place claimed ; if some do, or if there be one only, from whence the inference can be fairly made in favor of the place in question, that will do. Benedicta expositio fienda est propter simplicitatem laieorum. The entry shall be supported and not perish, if there be hints enough to spell out the meaning of the enterer, so as by fair conjunction to make out the spot contemplated. Recurrence to niceties does not promote justice, and withdraw the plain man from the snares of speculation. Does it promote peace and an honest pursuit of gain*by laudable means? No ! It encourages the cunning man to look for‘flaws in the title of his neighbor, and to withdraw him from the care of his farm and family into court, to defend himself against ’ attacks which it is for the public good should not be made. If we ask where does this entry lie, it can be answered with certainty that it lies within the fifth section and first range. It can be answered further, that it lies on the south boundary line of the section ; for on the west boundary its calls would go out of the section, on the north boundary the same. On the east boundary it cannot begin, on the southwest corner and section line also. Place it on the south boundary, and all is right; and if we reject the words James Robertson, then it will be an entry beginning at a corner on the section line, and bounded by the lines and courses expressed in the entry. Record’s corner is there; the section line also; and every other call mentioned in the entry. * And, moreover, there will not have been, at the time this entry was made, any more than one southwest cor *178 ner of any tract on this sectional line. This produces the most satisfactory conviction that no other corner but this could be meant. Does precedent authorize this rejection ? Does principle require it ? That it is a mistake, there is no doubt, for Robertson had no corner there. It is said he had a tract entered in the adjoining section. It is not proved ; it is said to be of a posterior date ; it was in his and Rains’s name. But there was a southwest corner of a tract in that line, and the only corner of that description. Precedents undoubtedly justify the rejection. The cases cited by Gleaves’s counsel, some of them, prove it. What did the court say in Henderson's Lessee v. Long, in Cooke’s Reports, 129? Suppose, said the court, we discard altogether that part of the entry which mentions the name of the lick, will not the entry still be good ? there is but one lick proved to be upon the creek, &c. So say we in the present case ; reject the words James Robertson, and there will be but one southwest corner proved on this sectional line, and that with the sectional line is sufficient to lead to the place where Winchester made his entry. So of the calls of another entry for Little Harper and Tatom’s line, one was rejected and the other adhered to. For being nine miles apart, it was evident that it was a mistake to call for Little Harper. So here it is evidently a mistake to call for James Robertson as the owner of the corner. Such rejection is clearly warranted by principle ; for the rule of the common law is, to preserve every transaction, and all written instruments, if by any sensible interpretation of their contents they can be made to stand. It is true that by posterior occurrences an entry at first uncertain may become certain enough; as where it called to begin on the continental line where it crossed Harper River. This entry, before the line was run, was so uncertain * that no one could tell what land it covered, but afterwards it had all possible certainty. In the present case, however, there is no necessity for resorting to this rule. The court proceeds on the ground that there are calls enough to fix the entry after overlooking the words James Robertson. It is probably true, also, that an entry originally imperfect may become perfect by other means, such as long continuance in possession of a certain place under it, including it in marked lines, &c. This, also, need not to be decided now, for the event of this case is not connected with that point. Winchester’s entry was originally a good one, and it contains calls which are *179 proved to exist at the place he claims. His equity exists, and, being prior to Gleaves’s, attracts to itself a right to the legal title. Decree all the lands within the bounds of Winchester’s entry and grant, which are also contained in Gleaves’s grant, shall be divested out of the defendant’s and vested in the plaintiffs.
See, as to parol evidence affecting land titles and notice to grantee, King’s Digest, 6034 et seq., and 7952 et seq. As to plea of former judgment in ejectment, Wilson v. Kilcannon, 1 Tenn. 201; Peeler v. Norris, 4 Yer. 331; Bugg v, Norris, 4 Yer. 326. See King’s Digest, 6034, 7952, 7953, 7985, 8566, 8574, 9699.